UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHANYA RAINEY, et al.,

     Plaintiffs,                            Case No. 1:11cv327

vs.

                                         Magistrate Judge Bowman

JEFF PATTON, et al.,

     Defendants.

**MEMORANDUM OF OPINION AND ORDER**

Plaintiffs Shanya Rainey and Antwan Roland filed the original complaint in this matter on June 7, 2011, asserting claims for illegal seizure/false arrest, excessive force, and malicious prosecution, pursuant 42 U.S.C. § 1983, against Defendants Jeff Patton and Brandon Goff. (Doc. 4). Plaintiffs' complaint arises out of a traffic stop involving Defendants, both of whom are Police Officers for the City of Cheviot, Ohio.

This civil action is now before the Court on Defendants' motion for summary judgment (Doc. 22) and the parties' responsive memoranda. (Docs. 26, 32).[1] Defendants have also submitted a Statement of Proposed Undisputed Facts (Doc. 23) and Plaintiff has filed a response thereto. (Doc. 31). The parties have consented to the exercise of jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 20). For the reasons set forth herein, Defendants' motion for summary judgment is granted.

---

[1] Defendants' motion for summary judgment is supported by the depositions of Shanya Rainey (Doc. 28), Antwan Roland (Doc. 27), Brandon Goff (Doc. 29) and Jeff Patton (Doc. 30), as well as the criminal complaint and trial transcript relating to Roland's disorderly conduct charge. (Doc. 22, Exs. E, F). Plaintiffs' response in opposition to Defendants' motion for summary judgment also attaches the Affidavits of Shanya Rainey, Antwan Patton and Deborah Burnam. (Doc. 26, Ex. 1-3).

**A. Facts**

*Plaintiff Rainey*

On September 23, 2010, Jeff Patton and Brandon Goff, both of whom are Police Officers for the City of Cheviot, Ohio, responded to a call for assistance from Plaintiff Shanya Rainey. (Rainey dep. at 20). Rainey called the police because she and her boyfriend had been arguing and she wanted him removed from her apartment. *Id.* Once the Officers arrived, Plaintiff's boyfriend was eventually removed from the apartment. Thereafter, Rainey also decided to leave her apartment because she feared her boyfriend would return. Rainey got into her vehicle and pulled out of the gravel apartment parking lot onto the adjacent street, Camvic Terrace. *Id.* at 28-29.

Officer Patton was behind Rainey as she left the parking lot. (Patton dep. at 9). According to Officer Patton, Rainey "accelerated rapidly" in the parking lot, throwing rocks from the wheels of her car, and then pulled out in front of another car on Camvic. (Patton dep. at 9). Because Rainey failed to yield when pulling out onto Camvic, Patton pursued her on Camvic with his lights on, signaling for her to pull over. *Id.* Plaintiff testified, however, that she did not pull out in front of another vehicle. (Rainey dep. at 29).

 Rainey did not pull over immediately upon noticing Officer Patton's overhead lights, and instead drove into a nearby parking lot of a Goodwill store located at the intersection of Camvic and North Bend Road. (Rainey dep. at 34). After Rainey pulled into the Goodwill parking lot, she asserts that she slowed momentarily and then drove diagonally all the way across the parking lot, stopping just short of a blocked exit. *Id.* Patton indicated that Rainey did momentarily stop on Camvic, but then she pulled away from him as he was exiting his cruiser in order to effectuate the traffic stop. (Patton dep. at 7). Once Rainey

2

stopped, Patton asserts that he brought his cruiser to a stop behind her vehicle and ordered Rainey out of her vehicle and to the ground.  He did so because she had failed to initially stop on Camvic and continued ignoring Patton's instruction to stop after turning into the Goodwill parking lot.  (Patton dep. at 14).  According to Rainey, once stopped, she remained in her car with the driver side door closed.  Officer Patton, however, asserts that Plaintiff was in the process of exiting her car when he pulled up behind her.  (Patton dep. at 14).

According to Rainey, Officer Patton's gun was drawn when he exited his vehicle. Officer Patton maintains that he drew his weapon because he could not see Rainey's hands as he was ordering her to ground.  (Patton dep. at 14).  After being ordered at least twice to do so by Patton, Rainey got down on the ground.

While on the ground, Plaintiff Rainey could hear Officer Patton's K9 police dog barking from his vehicle.  Rainey maintains that Officer Patton retrieved the dog from his police vehicle and began yelling as he guided the dog to Plaintiff's location on the ground. (Rainey dep.at 43; Roland dep. at 13-14).  Rainey testified that Officer Patton got the dog in position over Rainey's body and continued yelling at Rainey.  According to Rainey, Officer Patton released the dog's choke chain that was restraining the dog and the dog proceeded to attack Plaintiff Rainey by biting her on the back.  (Rainey dep. 44-45 ). Rainey did not hear Officer Patton give the K9 a command to bite her.

Additionally, when Rainey got down on the ground she had her cell phone in her hand. (Rainey dep. at 39).  Patton testified that he asked Rainey several times to put down her cell phone.  (Patton dep. at 16).  Rainey maintains that she was told only once to do so.  (Doc. 26, ¶ 10).  Rainey further testified that she tried to use her cell phone to call

3

someone while she was laying on the ground after she was bitten by the dog. (Rainey dep. at 40-42). She then threw the phone down to prevent the Officers from taking it away from her. *Id.* at 41.

According to Patton, the dog exited the cruiser on its own, through an open window of the cruiser. (Patton dep. at 19). Patton asserts that while Rainey was on the ground, she turned her head quickly away from the K9 unit and was immediately bitten by the dog on the back. Patton testified that the K9 unit is not trained to "attack" suspects, only to "apprehend and hold" fleeing suspects. (Patton dep. at 25). Patton further testified that the K9 unit is trained to bite suspects when they move defensibly during an arrest. (Patton dep. at 50).

At some point during this encounter, Officer Patton radioed Officer Goff to respond to the parking lot to assist with handcuffing Rainey. Officer Goff arrived at the scene immediately after Rainey was bitten by the K9 unit. Officer Goff placed Rainey in handcuffs and transported Rainey to the police/fire station to be seen by an EMT. (Rainey dep. at 50). The emergency personnel at the station indicated that Rainey needed to go to the hospital. *Id.* Officer Goff then transported Rainey to University Hospital for treatment. The wound was cleaned and Plaintiff was given some pain medication. (Rainey dep. at 66). She was charged and then released. *Id.* at 64.[2]

*Plaintiff Roland*

Antwan Roland was on a scooter near Camvic Terrace and witnessed the incident with Rainey and Officers Patton and Goff. (Roland dep. at 9). When Roland arrived at the

---

[2] The record is unclear as to Plaintiff's charges stemming from this incident. However, Plaintiff Rainey testified that she was convicted of failure to yield the right of way. (Rainey dep. at 30).

4

Goodwill parking lot, he first noticed that both Rainey's and Patton's cars were stopped in the parking lot and that Patton was in the process of ordering Rainey to the ground. (Roland dep. at 23).  According to Roland, once Rainey was on the ground, Patton retrieved the K9 unit from his cruiser and began yelling at Rainey.  (Roland dep. at 23). Roland further testified that Patton allowed some slack in the K9's chain, and the K9 lunged forward and bit Rainey on the back.  (Roland dep. at 26).

After Rainey is bitten by the K9 unit, Officer Patton noticed that Roland is present at the scene.  (Patton dep. at 39).  Thereafter, Patton secured the K9 unit in his cruiser and ordered Roland to leave the area.  (Patton dep. at 39; Roland dep. at 32).  Patton testified that he told Roland to leave the scene because Rainey was not yet handcuffed and it was distracting to have a bystander present while Rainey was unrestrained.  (Patton dep. at 39). According to Officer Patton, Roland walked within 15 feet of Patton and Rainey.  Roland maintains that Officer Patton ordered him to leave again and told Roland that if he was not gone by the time Officer Goff arrived he was "going to jail."  (Roland dep. at 33).

According to Roland, after Rainey was bitten, Officer Patton told Roland to leave and Roland stated "I'm not even close to you guys, I'm far away, I ain't got nothing to do with anything."  (Roland dep. at 14-15).  Roland testified he and Patton continued to shout at one another and Patton told Roland that if he was still on the scene with Officer Goff arrived he was going to jail.  (Roland dep. at 33).  Roland further testified that while he and Patton were shouting at each other, Plaintiff Rainey was uncuffed and still face down on the ground.  *Id.* Officer Goff arrived at the scene, handcuffed Rainey and escorted her to the cruiser.  *Id.* at 34-35.  As Rainey was being escorted to the police cruiser, Roland testified that he and Rainey continued yelling back and forth to one another about the incident.  *Id.*

5

According to Officer Goff, Roland was texting on his cell phone and Goff feared a crowd was being summoned, which could escalate the situation. (Goff dep. at 23). As a result, Goff asked Roland to leave the scene at least three times. (Goff dep. at 21). Roland refused to leave and Goff ultimately detained him for disorderly conduct.

Roland, however, asserts that he remained about 100 feet away from Officer Patton throughout the entire incident. (Roland Aff., ¶ 10). Roland also disputes that he was sending text messages and asserts that he did not have his cell phone in his hand during the relevant period. (Roland Aff., ¶ 15).

Roland's case proceeded to trial and he was ultimately acquitted on the charge of disorderly conduct. (Doc. 22, Ex. F)

*The Instant Action*

In light of the foregoing, Plaintiffs Rainey and Patton filed the instant action on June 7, 2011, asserting claims for illegal seizure/false arrest, excessive force, and malicious prosecution, pursuant 42 U.S.C. § 1983, against Defendants Jeff Patton and Brandon Goff. (Doc. 4). On July 15, 2011, Defendants filed the instant motion to dismiss Plaintiffs' complaint. (Doc. 10).

In an effort to cure the alleged deficiencies in the original complaint, the amended complaint abandoned Plaintiff Rainey's claims for false arrest and malicious prosecution asserted against both Defendants, as well as Plaintiff Rainey's excessive force claim asserted against Defendant Goff. (Doc. 12). With respect to Plaintiff Roland, the amended complaint omits his original claims for excessive force against Defendant Goff and malicious prosecution against Defendant Patton. The amended complaint also contains newly asserted claims by Plaintiff Roland for excessive force against Defendant Patton and

false arrest against Defendant Goff.

Defendants now move for summary judgment on Plaintiffs' claims and assert that they are entitled to judgment as a matter of law. Defendants argue that the facts do not establish that Plaintiffs' constitutional rights were violated, and that Defendants are entitled to qualified immunity. Defendants further argue that Plaintiff Roland's claims fail as a matter of law because probable cause existed to detain and cite him for disorderly conduct. Plaintiffs ask the Court to deny Defendants' motion, asserting that genuine issues of material fact exist thereby precluding summary judgment.

## II. Analysis

### A. Summary Judgment Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its

initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support her claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

### B. Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial.  *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).  The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).  *See also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).  Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact.  *Pearson*, 555 U.S. at 231.

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the injury?  *Saucier v. Katz,* 533 U.S. 194, 201 (2001). In its discretion, the court may initially address either of these questions in light of the circumstances of the particular case before it in resolving an officer's qualified immunity claim.  *Pearson,* 555 U.S. at 236-37.

Plaintiff bears the burden of showing that a right is clearly established.  *Everson v.*

*Leis*, 556 F.3d 484, 494 (6th Cir. 2009). Defendants, however, bear the burden of showing that the challenged actions were objectively reasonable in light of the law existing at the time. *Id.*

In determining whether a right is "clearly established" for purposes of the qualified immunity inquiry, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202. This question must be answered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier,* 533 U.S. at 201). The unlawfulness of the officer's conduct must be apparent in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir. 1994) (citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir. 1993)).

Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).

**C.    Qualified Immunity analysis on Plaintiff Rainey's excessive force claim**

*A.  Constitutional Violation*

To decide whether Plaintiff Rainey has presented evidence of a violation of her constitutional rights, the Court must first determine the source of the claimed right. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). The Fourth Amendment to the U.S. Constitution

protects citizens from the excessive use of force when police make an arrest or seizure. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Excessive force claims under the Fourth Amendment are analyzed pursuant to an objective reasonableness test. *Graham,* 490 U.S. at 395-96; *Matthews v. Jones*, 35 F.3d 1046, 1050 (6th Cir. 1994). This test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. The "reasonableness" of an officer's use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Furthermore*,* a successful § 1983 claimant must establish that "the defendant acted knowingly or intentionally to violate his or her constitutional rights, such that mere negligence or recklessness is insufficient." *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). The Supreme Court has been explicit about this requirement in the Fourth Amendment context, instructing that a "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989).

Thus, "the Fourth Amendment addresses misuse of power, not the accidental effects of otherwise lawful government conduct." *Brower v. Inyo County,* 489 U.S. 593, 596 (1989). *See also Apodaca v. Rio Arriba County Sheriff's Department*, 905 F.2d 1445, 1447 (10th Cir. 1990) ("[O]ne seized unintentionally does not have a constitutional complaint."); *Koetter v. Davies*, 2010 WL 3791482 at *5 (D. Utah Sept. 22, 2010) ("[T]he Fourth Amendment prohibition on excessive force during arrest does not apply to unintentional or incidental

applications of force."). *See also Dodd v. City of Norwich*, 827 F.2d 1, 7 (2nd Cir. 1987) (opinion on reargument) ("It makes little sense to apply a standard of reasonableness to an accident.").

Plaintiff's allegation of excessive force focuses solely on Officer's Patton's use of his police canine which resulted in a bite to Plaintiff's back. For purposes of summary judgment, the Court must accept the Plaintiff's version of events as true, and must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.*, 477 U.S. at 251-52. Applying a Fourth Amendment analysis to Plaintiff's excessive force claim, the facts taken in a light most favorable to Plaintiff Rainey are insufficient to establish a violation of her constitutional rights as Officer Patton acted reasonably under the circumstances.

As noted above, Officer Patton initiated a traffic stop due to the manner in which Plaintiff Rainey pulled out of the parking lot of her apartment building.[3] Plaintiff Rainey testified that she did not immediately stop after Officer Patton turned on his lights. (Rainey Dep. at 32). According to Rainey, when she noticed the lights on Officer Patton's car, she slowed briefly on the roadway. *Id.* at 33. She then continued driving through the parking lot to the front of the Goodwill store and stopped in a lighted area. *Id.* After Rainey stopped her vehicle, Patton ordered her out of the vehicle and onto the ground. Rainey testified that she did not immediately comply with Patton's order to get on the ground, and that he ordered her to the ground at least twice. (Rainey dep. at 36). Plaintiff also testified

---

[3] Plaintiff disputes that she committed a traffic offense, however, she was subsequently convicted of failure to yield the right of way for the way she left the parking lot and turned onto Camvic. (Rainey dep. at 30).

that she had her cell phone in her hand when she got down on the ground despite being ordered to put it down. Plaintiff further testified that Officer Patton retrieved the K9 unit dog from his police vehicle while he was yelling at her to get down on the ground. The dog bit her as Officer Patton was standing over Plaintiff.

Based on Plaintiff's version of the facts, the undersigned concludes that Officer Patton acted reasonably under the circumstances. Plaintiff admitted that she delayed pulling over her vehicle after Officer Patton turned on his cruiser lights. Plaintiff further testified that she did not immediately comply with Officer Patton's commands to get on the ground and put down her cell phone. (Rainey dep. at 40-42). Plaintiff's testimony also indicates that she was attempting to use her cell phone during her encounter with Officer Patton. *Id.* Accepting as true Plaintiff's assertion that Officer Patton purposefully retrieved the canine from his vehicle while Plaintiff was on the ground, the Court finds that such action was reasonable under the circumstances.

Notably, Officer Patton was the lone officer at the scene. Although Plaintiff was pulled over for a seemingly minor traffic violation, her evasive behavior when stopping her vehicle and admitted failure to obey Officer Patton's subsequent orders, would lead a reasonable officer to conclude that Plaintiff was evading arrest and/or posed threat to Officer Patton's safety. *See Graham*, 490 U.S. at 396. Furthermore, Plaintiff was not handcuffed or otherwise restrained at the time of her encounter with the canine. *McDowell v. Rogers,* 863 F.2d 1302, 1307 (6th Cir. 1988) (The Sixth Circuit has held that the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional.). *See also White v. Harmon*, No. 94–1456, 1995 WL 518865, at *3 (6th Cir. Aug. 31, 1995) (A canine handler was not entitled to qualified immunity for bringing a little-trained dog to an

13

arrest scene where the plaintiff had already been handcuffed and for failing to prevent the dog from biting the plaintiff).

The undersigned recognizes that several courts have found that attacks by police canines who are improperly deployed by their handlers can constitute an excessive use of force. *Id. See Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 178 (4th Cir. 1998) (reversing summary judgment as to an excessive force claim where an officer released a police dog into a house to find and bite a suspect without first calling out a warning); *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1089 (9th Cir. 1998) (affirming denial of summary judgment on an excessive force claim involving a police dog where there was a question of fact as to whether the handler allowed the dog to bite the plaintiff for an unreasonable amount of time before he finally called off the dog); *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1551–52, 1556–57 (11th Cir. 1989) (describing incidents where use of dogs involved excessive force against suspects of minor and nonviolent crimes, and reinstating the plaintiffs' verdict based on unconstitutional city policy of inadequate training on use of dogs).

However, such cases each involved an intentional commanded deployment of the canine by the Officer handler and/or involved allegations of inadequate canine training. Neither of which occurred here. The undisputed evidence establishes that Officer Patton did not command the dog to attack or bite Plaintiff Rainey.[4]  Moreover, Plaintiff does not

---

[4] Plaintiff Rainey submitted an affidavit in support of Plaintiffs' memorandum in opposition to Defendants' motion for summary judgement wherein she states:

> While it is true that I did not hear Defendant Patton give any specific verbal command to the dog to attack me it is not true that I did not hear Patton give such a command at all.  Patton yelled at me, thus causing the dog to become agitated, and advances the dog to me while I was face down and flat [on] the ground.  Patton took the agitated and frantically barking dog directly over me

assert that Officer Patton was not properly trained to handle the dog.  While Officer Patton may have acted negligently by failing to adequately secure the canine this, however, is not the type of intentional or knowing contact required for a § 1983 claim.  *See Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir. 2004) (canine police handler entitled to qualified immunity for a spontaneous unintentional bite of arrested by leashed police canine); *Neal v. Melton*, 453 F. App'x 572, 577-78 (6th Cir. 2011) (officers' failure to secure dog during traffic stop was not the type of intentional or knowing contact required for a § 1983 claim).  *See also Neeley v. Samis,* 183 F.Supp.2d 672, 682 (D. Del. 2002) (Police officers were entitled to qualified immunity for purposes of plaintiff's § 1983 action alleging use of excessive force in making arrest; reasonable officers could not know their actions violated any law where no persuasive case law supported notion that officers should be responsible for an uncommanded attack by a police dog.); *See also Andrade v. City of Burlingame*, 847 F.Supp. 760, 764 (N.D. Cal. 1994) (police dog bite did not implicate the Fourth Amendment because the officer did not intend to use the police dog as the means to subdue the plaintiffs, who were already seized when the dog escaped from the patrol car and bit them).

Accordingly, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396, the undersigned finds that Officer Patton's actions did not violate Plaintiff's Fourth Amendment rights.

---

while Patton continued shouting, and then Patton released the "choke chain" on the dog's collar just after I turned my head away from the dog.  The dog then bit me.  The release of the choke chain under those circumstances most certainly was a command to the dog to attack me.

(Doc. 26, Ex. 1).

Such statements are not based on personal knowledge and Plaintiff is not an expert on police canine commands or training.  As such, these statements cannot be used to establish that Officer Patton intentionally released or commanded the dog to attack Rainey.

15

B. *Clearly Established Right*

Assuming, *arguendo*, that Plaintiff has established a violation of her constitutional rights, to defeat an invocation of qualified immunity, Plaintiff must also show that constitutional right in question was clearly established.  In determining whether a right is clearly established, the Supreme Court has held, the crucial inquiry must "be undertaken in light of the specific context of the case, not as a broad general proposition."  *Saucier*, 533 U.S. at 201.  There is a clear Constitutional prohibition against the use of excessive force in effecting an arrest.  *Graham*, 490 U.S. at 394.   However, the test of "clearly established law" cannot be applied at that level of generality.  *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  Instead, the right at issue "must have been 'clearly established' in a more particularized, and hence more relevant, sense:   The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

The particularized inquiry does not require Plaintiffs to demonstrate that "the very action in question has previously been held unlawful" in order to defeat Defendants' claim of qualified immunity.  *Griffith v. Coburn*, 473 F.3d 650, 659 (6th Cir. 2007) ("The mere fact that a court has not held the particular action in question unlawful is insufficient to create immunity."); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Accordingly, the Supreme Court has refused to require that a plaintiff demonstrate the existence of a "fundamentally similar" or "materially similar" case.  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  There can be "notable factual distinctions between the precedents relied on ... so long as the prior decisions g[i]ve reasonable warning that the conduct then at issue violated constitutional rights." *Id.* at 740.  "[O]fficials can still be on notice that their

16

conduct violates established law even in novel factual circumstances." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004).

To demonstrate that Officer Patton unreasonably violated a clearly established right, "the Plaintiff[s] must therefore show the prior articulation of a prohibition against the type of excess force exerted here*." Id.* In evaluating the contours of the right, the Court "'look[s] first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits.'" *Sallier v. Brooks*, 343 F.3d 868, 878 (6th Cir. 2003) (quoting *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994)). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs*." Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). In other words, "[t]he Court can consider more than merely the factual context of a prior case: the general reasoning that a court employs also may suffice for purposes of putting the defendant on notice that his conduct is clearly unconstitutional." *St. John v. Hickey*, 411 F.3d 762, 774 (6th Cir. 2005) (internal quotation marks omitted).

Here, Plaintiff argues that the Sixth Circuit has repeatedly held that the right of a non-violent arrestee to be free from excessive force is a clearly established right. *St. John v. Hickey*, 411 F.3d 762,772, 774 (6th Cir. 2005). *See also Minchella v. Bauman*, 72 F. App'x 405, 408-09 (6th Cir. Aug. 13, 2003) (denying summary judgment to officers on an excessive-force claim--relating to an arrest in 1999--because the plaintiff's "crime was not severe," the plaintiff "posed no threat to the Officers or the community"); *Davis v. Yovella*,110 F.3d 63, 1997 WL 159363 at *(6th Cir. Apr. 2, 1997) (denying qualified immunity to an officer on an excessive-force claim because "the charges against [the plaintiff]. . . were

not serious", there [was] no evidence that [the plaintiff] "posed a risk to the officers or anyone present" and "the record show[ed] that he did not resist arrest".)

The undersigned agrees that Plaintiff's assertion accurately states the law.  However, the "clearly established" inquiry "must be undertaken in consideration of the specific context of the case, not as a broad general proposition...." *Katz,* 533 U.S. at 201.  Thus, the issue here is whether the boundaries of the Fourth Amendment right against excessive force were clearly established in the context of police dog use at the time of Plaintiffs' arrest in September 2010.  *Campbell v. City of Springboro, Ohio,* 788 F.Supp.2d 637, 674 -675 (S.D. Ohio 2011).   Notably, the Supreme Court has cautioned against interpreting clearly established law too generally for fear of allowing plaintiffs "to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Defendants argue that it is clear from Sixth Circuit precedent that there is no generalized right to not have a K9 unit present during a traffic stop, particularly in the context of an actual arrest.  As recently noted by Judge Dlott, "the Sixth Circuit [has] expressed a "reluctance to label "unreasonable" the general practice of using police dogs to aid in locating and apprehending suspects." *Campbell v. City of Springboro, Ohio*, 788 F. Supp.2d 637, 668 (citing *Matthews v. Jones*, 35 F.3d 1046, 1052 (6th Cir. 1994) and *Robinette v. Barnes*, 854 F.2d 909, 914 (6th Cir. 1988)), *see also Dunigan v. Noble,* 390 486, 492 (6th Cir. 2004) (holding that the presence of a K9 unit during an arrest was reasonable because of the possibility of flight).  The Court in *Campbell* further explained:

> Sixth Circuit decisions demonstrate that there is a continuum of permissible versus impermissible use when it comes to police dogs.  On the permissible end of that spectrum are cases wherein officers deploy properly trained police dogs to locate individuals who were believed to be involved in

nefarious criminal activity, who may have been armed and dangerous, and who failed to surrender or respond in any manner after officers gave several warnings. *See Robinette*, 854 F.2d at 909; *Matthews*, 35 F.3d at 1052. On the other end of that spectrum lies a case in which a canine officer allowed a little-trained police dog to get close enough to a subject of a track to bite the subject despite the fact that the subject had already been subdued and placed in handcuffs. *See White*, No. 94–1456, 1995 WL 518865, at *3.

*Campbell*, 788 F.Supp.2d at 676.

Under Plaintiff's version of the facts, the Court finds that this case is more closely aligned with the spectrum of Sixth Circuit cases addressing the permissible use of police dogs and that Officer Patton's actions did not violate clearly established law. As detailed above, Plaintiff did not immediately respond to Officer Patton's efforts to pull her over, she failed to obey Officer Patton's commands, and she was not handcuffed or otherwise subdued at the time the canine was deployed. Moreover, Plaintiff does not offer any evidence or argument that Officer Patton was not properly trained to handle the canine or that the canine had a history of uncommanded attacks. The fact that Rainey suffered a dog bite is unfortunate, however, it was not due to Officer Patton violating clearly established law. Accordingly, Officer Patton is entitled judgment as a matter of law based upon to qualified immunity.

**D.    Plaintiff Roland's illegal seizure/malicious prosecutions claims[5]**

Plaintiff Roland claims that Defendants illegally arrested him and wrongfully prosecuted him in violation of his Fourth Amendment rights and Ohio state law. Defendants assert that they are entitled to judgment as a matter of law with respect to Plaintiff Roland's illegal seizure and malicious prosecution claims because probable cause existed for Officer

---

[5] Plaintiffs' response in opposition to Defendants' motion for summary judgment indicates that Plaintiff Roland abandoned his excessive force claims. (Doc. 26 at 1).

Patton and Officer Goff to detain and cite Roland for disorderly conduct or obstruction of official business.  Because probable cause existed to detain Roland, Defendants argue that Roland's claims fail as a matter of law.  The undersigned agrees.

"By virtue of its incorporation into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollon*, 443 U.S. 137, 142-43 (1979).  Thus, arrest, even without a warrant, does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law.  *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).  The Supreme Court has defined "probable cause" as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Id.* at 37; *See also Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975) ("a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime"); *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 305 (6th Cir. 2005) (An officer has probable cause when he discovers reasonably reliable information that a suspect has committed a crime)(internal citations omitted).  Thus, in order to establish a violation his Fourth Amendment rights, Roland must show that the Officer's lacked probable cause for his arrest.[6]

---

[6]  Plaintiff Roland's claim for malicious prosecution also "rise and fall with the analysis of whether Officer Goff had probable cause to arrest him."  (Doc. 26 at 8).  Notably, in order to prevail on an Ohio state law claim for malicious prosecution, a Plaintiff must prove the following elements: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.  *Criss v. Springfield Township*, 56 Ohio St.3d 82, 84 (1990) (internal citations omitted).  As detailed below, the undersigned finds that Officer Goff had probable cause to arrest Roland for disorderly conduct.  Accordingly, Defendants are therefore entitled to judgment as a matter of law with respect to Roland's

Furthermore, the fact that a suspect is later acquitted of the offense for which he was arrested is irrelevant to the validity of the arrest. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).  Whether the facts of a particular case show that an arrest was justified by probable cause requires an examination of the elements of the crime at issue.  *Nerswick v. CSX Trans.*, 692 F. Supp.2d 866, 881 (S.D. Ohio 2010).  Moreover, the fact that a suspect was later charged with a different crime and acquitted is of no consequence to the probable cause analysis; so long probable cause existed to seize a suspect for any crime, an arrest is legal. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

In the present case, Officer Goff cited Roland for disorderly conduct under O.R.C. 2917.11(A)(5).  Under that section, an individual is guilty of disorderly conduct when he "recklessly caus[es] inconvenience, annoyance, or alarm to another by creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender." *Id.* Roland's case proceeded to trial.  After the close of the states' evidence, the trial judge overruled Roland's Rule 29 motion for acquittal.[7]  (Doc. 22, Ex. E).  However, Roland was ultimately acquitted and found not guilty of disorderly conduct.

Defendants maintain that the denial of a Rule 29 motion "may be viewed as a determination that the evidence is at least sufficient to demonstrate probable cause." *Brunswick v. City of Cincinnati*, No. 1:10-cv-617, 2011 WL 4482373 *5-6 (S.D. Ohio Sept.

---

malicious prosecution claim.

[7] Ohio Rule of Criminal Procedure 29 (a) provides in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

21

27, 2011) (Chief Judge Dlott). Notably, the standard for demonstrating probable cause is a lesser burden than the standard for surviving a Rule 29 motion for acquittal. *See State v. Bassham,* No.2000 CA 29, 2000 WL 896238, at *3 (Ohio Ct. App. July 7, 2000). Thus, although not conclusive on the issue, the denial of a rule 29 motion for acquittal is evidence that there was probable cause for arrest. *Briner v. City of Ontario*, No. 1:07CV129, 2007 WL 2891343 (N.D. Ohio Sept. 28, 2007).

Here, the undisputed facts establish that Roland was interfering with and/or inconveniencing the Officer's efforts to detain and arrest Rainey. Notably, Roland testified that he was yelling back and forth with Officer Patton arguing about leaving the scene while Rainey was still uncuffed and laying on the ground. (Roland dep. at 33). Roland further testified that after Rainey was handcuffed, he and Rainey were yelling at each other about what happened. The undersigned finds that Roland's own testimony coupled with the trial court's denial of the Rule 29 Motion, sufficiently establish that Defendants had probable cause to detain Roland for disorderly conduct.[8] Accordingly, Roland has failed to establish a violation of his constitutional rights.

Even assuming that Roland has established a question of fact relating to a violation of his constitutional rights, Defendants are nonetheless entitled to qualified immunity because he has not shown that Defendants violated a clearly established right or otherwise

---

[8] Defendants further assert that they also had probable cause to charge Roland with obstruction of official business under O.R.C. 2921.31. A person is guilty of obstruction of official business when, without privilege to do so, and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, the individual does an act which hampers or impedes a public official in the performance of his lawful duties. O.R.C. 2921.31(A). Plaintiff Roland, however, argues that an "affirmative act" is required to charge him under that statute and he was "doing nothing" just standing on the sidewalk. (Doc. 26 at 10). As detailed above, contrary to Plaintiff's assertion, the evidence establishes that he was yelling back and forth with Rainey and arguing with Officer Patton, while Officer Patton was attempting to subdue Rainey.

acted unreasonably.

Plaintiff Roland asserts that he was wrongfully arrested in violation of his Fourth Amendments Rights because he was doing nothing more than standing on the sidewalk and "talking to an already in custody and compliant Rainey."  (Doc. 26 at 11).  However, Roland's testimony provides otherwise.  As detailed above, prior to Rainey being handcuffed, Roland was yelling and arguing with Officer Patton and refused to leave the area after being told to move on.  Furthermore, Officer Goff testified that Roland was ordered to leave the area "to prevent a crowd from forming" and keep the area clear of pedestrians." (Doc. 22, Ex. E at 51).  The undersigned agrees with Defendants that the Officers had a reasonable expectation that they had lawful authority to form a perimeter around their arrest scene and thus, their order to Roland to "move on" was objectively reasonable.

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).  Viewing the facts in favor of Plaintiff Roland, there is no evidence that Officer Patton or Officer Goff knowingly violated the law.

### III.  Conclusion

For these reasons, **IT IS THEREFORE ORDERED THAT**: Defendants' motion for summary judgment (Doc. 22) is **GRANTED,** and this matter is therefore **TERMINATED** on the active docket of the Court.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge